UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        No. 1:25-CR-225
                                :
v.                              :        (Judge Wilson)
                                :
JASON LEE WHITE,                :
            Defendant           :

UNITED STATES SENTENCING MEMORANDUM

The United States respectfully submits this memorandum in advance of defendant Jason Lee White's sentencing for receiving child pornography.  White communicated with minors to solicit child pornography, accessed the dark web to acquire additional contraband, and possessed tens of thousands of images and videos of child sexual abuse material (CSAM), including depictions of infants and toddlers being sexually abused.  His extraordinary offense conduct warrants a serious sentence.

The Court should overrule White's single objection to the PSR and impose a sentence at or near the bottom of White's 135-to-168-month Guidelines range.  If the Court is inclined to vary, the Government recommends that any variance be modest given the seriousness of White's conduct and his troubling criminal history.

## I.   BACKGROUND

The PSR accurately details White's offense conduct.  PSR ¶¶ 5-11.

In January 2023, law enforcement in Tampa, Florida were investigating the online dissemination of child pornography over Instagram.  As part of that investigation, officers reviewed chat and posting information for Instagram accounts maintained by a 13-year-old girl.  White was one of those Instagram users who was chatting with her online, using the name "Mikelitterous95."  PSR ¶ 6.

During a chat on January 24, 2023, White confirmed the girl was 13 years old and told her he was 35 years old.  *Id.*  White asked the girl, "Did u see the dick pick I sent u before my account got banned?" and sent a picture of a penis with an adult male's hand next to it.  *Id.*  White told he girl that he had previously purchased explicit images of her via Instagram and told her "you have a really nice pussy."  *Id.*

On November 10, 2023, police executed a search warrant at White's house in Abbottstown, Pennsylvania.  PSR ¶ 7.  White was asleep in his bedroom, where officers saw a computer on with web browser tabs opened for Instagram and Only Fans.  *Id.*  Officers seized

2

multiple cellphones, a laptop computer, a desktop computer, gaming consoles, and hard drives, which were forensically examined. *Id.* The devices were found to contain tens of thousands of images and videos depicting child pornography. PSR ¶¶ 8-11. Many of the videos and images depict minors (including prepubescent children and toddlers) engaged in explicit sexual activity with adults and with other minors, and others depict the lascivious display of minors' genitalia. *Id.*

On September 16, 2025, pursuant to a plea agreement, White pleaded guilty to an information charging him with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). Doc. 1 (information); Doc. 2 (plea agreement); Doc. 8 (guilty plea).

## II.  THE PSR CORRECTLY CALCULATES WHITE'S GUIDELINES

The PSR calculates that White's offense level is 32, consisting of:

- A base offense level of 22 (§ 2G2.2(a)(2));

- A 2-level increase because the material involved a prepubescent minor or a minor who had not attained the age of 12 years (§ 2G2.2(b)(2));

- A 4-level increase because the offense involved material that portrays the sexual abuse or exploitation of an infant or toddler (§ 2G2.2(b)(4)(B));

- A 2-level increase because the offense involved the use of a computer (§ 2G2.2(b)(6));

- A 5-level increase because the offense involved 600 or more images (§ 2G2.2(b)(7)(D)); and

- A 3-level reduction because White clearly demonstrated acceptance of responsibility for his offense (§ 3E1.1).

PSR ¶¶ 17-28.  White had a prior felony conviction (in connection with the burning of a structure in Duncannon in 2009), placing him in criminal history category II.  PSR ¶¶ 31, 35.[1]  Based on a total offense level of 32 and a criminal history category of II, White's guidelines range is 135 to 168 months.

White lodged a single objection to the PSR, arguing that the 4-level enhancement prescribed by USSG § 2G2.2(b)(4) should not be assessed.  PSR Addendum.  White's objection is meritless.

Under § 2G2.2(b)(4), a 4-level enhancement applies when the offense involves material portraying sadistic or masochistic conduct or

---

[1] White's criminal history also included three convictions that did not receive criminal history points, including a second conviction for criminal trespass that also involved the attempted burning of a building and two motor vehicle violations.  PSR ¶¶ 32, 33, 34.

other depictions of violence.  Images depicting the sexual abuse of infants or toddlers qualify categorically.  The text of § 2G2.2(b)(4) does not include a mens rea element, and precedent confirms that the enhancement applies based on strict liability.

In *United States v. Maurer*, 639 F.3d 72 (3d Cir. 2011), the Third Circuit held that § 2G2.2(b)(4) does not require proof of the defendant's intent to receive or seek out the qualifying material.  Instead, "Section 2G2.2(b)(4) is applied on the basis of strict liability." *Id.* at 80.  The court explained that the enhancement applies so long as the material was present in the defendant's collection. *Id.* at 79.

In *United States v. Dashem*, No. 21-1799, 2022 WL 2037945 (3d Cir. June 7, 2022), the Third Circuit relied on *Mauer* to reject an argument nearly identical to White's—namely, that lack of subjective intent regarding the ages of the victims should defeat § 2G2.2(b)(4)'s application. *Id.* at *3 ("The Guidelines do not require a finding of defendant's mens rea before applying the enhancement.") (citing *Maurer*, 639 F.3d at 80).  In *Dashen*, the court likewise held that intent is irrelevant; § 2G2.2(b)(4) applies when the defendant possessed

material that qualifies under the guideline.  *Id.*  And this conclusion is not only consistent with *Mauer*, but it is consistent with how the Guidelines generally apply: "[s]entencing enhancements generally are imposed on the basis of strict liability rather than on the defendant's intentions or even his lack of care."  *Id.* (quoting *United States v. Richardson*, 238 F.3d 837, 840 (7th Cir. 2001)).  Indeed, "[t]he guidelines contain numerous provisions enhancing punishment when the defendant causes more harm than the usual harm that the offense inflicts, without regard to whether unusual harm was intended."  *Id.*

White does not dispute that he possessed images depicting the sexual abuse of infants and toddlers within the tens of thousands of images in his collection.  PSR ¶ 11.  Thus, based on the plain text of § 2G2.2(b)(4) and *Maurer*'s unequivocal holding, the enhancement applies regardless of whether White "intended" to acquire images or "knew" that he possessed them.  White's reliance on out-of-circuit authority is misplaced, and his effort to evade *Mauer* and *Dashem* is unpersuasive.  White's objection to the PSR should be overruled, and

the Court should find that White's advisory guidelines range is 135 to 168 months.

## III.    A SENTENCE WITHIN THE GUIDELINES IS WARRANTED

In addition to considering the advisory Guidelines, the Court must consider the seven sentencing factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7). *See Gall v. United States*, 552 U.S. 32, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

7

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### A.    The Nature and Circumstances of the Offense Warrant a Guidelines Sentence.

The nature and circumstances of White's offense—using the internet to solicit and receive child pornography—are very serious. Child pornography is "repugnant to the moral instincts of decent people." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). And child pornography "harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The demand for child pornography harms children in part because it drives production, which involves child abuse." *Paroline v. United States*, 572 U.S. 434, 439-40 (2014). Furthermore, the "harms caused by child pornography . . . are  . . . extensive because child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by [its] distribution." *Id.* at 440 (cleaned up).

Not only did White collect and view child pornography regularly, but he actively solicited such material directly from minors, used the dark web to expand his collection, and eventually amassed a collection of nearly 50,000 images and videos portraying the unspeakable abuse of vulnerable children. And White's collection includes material depicting extreme abuse, including sexual assaults of infants and toddlers. These facts place his conduct among the gravest seen in these kinds of cases and should be given special consideration when fashioning a sentence.

B. **The need for deterrence and protection of the public counsel against a variance.**

White previously went to prison for helping to burn a building to the ground. PSR ¶ 31. Thirteen fire companies and 80 firefighters worked in vain at great personal risk to extinguish the fire that White helped to set. *Id.* To be sure, White is not being sentenced for arson, but his past willingness to participate in dangerous conduct that placed others at risk of harm evinces a callousness that is also reflected by his current offense. White's thirst to obtain images of child pornography— which is produced through the unspeakable abuse of vulnerable victims whose lives are damaged in the process—is likewise cruel and callous.

And the failure of past criminal sentences (including both prison and probation) was insufficient to dissuade White from committing the offenses in this case.

Accordingly, the need for both specific and general deterrence is acute. So too the need to protect the public. Offenses involving solicitation of minors, dark-web access, and receipt of grievous child pornography reflect a substantial risk of future harm. White's decision to enroll in voluntary treatment, and his prompt admission of guilt, are positive steps, but they do not mitigate the need for deterrence (particularly given the failure of past sentences to deter future misconduct), and they do not override the need to protect the public.

C.    A Guideline sentence avoids sentencing disparities.

Courts routinely impose Guidelines sentences in cases involving similarly severe conduct. Between 2021 and 2025, there were 52 defendants nationwide whose primary Guideline was § 2G2.2, with a final offense level of 32 and a criminal history category of II, excluding defendants who received a substantial assistance departure. *See*

10

https://jsin.ussc.gov.  For those 52 defendants, the average length of imprisonment was 137 months, and the median length was 135 months. A sentence at or near the bottom of White's advisory range would thus be in line with sentences courts typically impose in these kinds of cases.

If the Court is inclined to vary below the Guidelines to account for White's prompt acceptance of responsibility and his participation in sex offender treatment, the Government submits that a variance should be modest so as not to undermine other important sentencing objectives.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence White within the advisory guidelines range and order that he serve not less than 10 years of supervised release, as such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

May 28, 2026

/s/ Christian T. Haugsby
Christian T. Haugsby
Assistant U.S. Attorney
Middle District of Pennsylvania
PA 205383
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
(717) 221-4482
christian.haugsby@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 28, 2026, I served the United States'

Sentencing Memorandum by ECF and email to:

Steve Rice, Esq.
teamsr@stevericelaw.com

/s/ Christian T. Haugsby
Christian T. Haugsby
Assistant U.S. Attorney